# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DANA RUSH, and a class of similarly situated individuals,<br><br>Respondents,<br><br>v.<br><br>STATE OF WASHINGTON,<br><br>Petitioner. | No. 87477-2-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |
| GARY WOLF, and a class of similarly situated individuals,<br><br>Respondents,<br><br>v.<br><br>STATE OF WASHINGTON and THE WASHINGTON STATE BOARD OF COMMUNITY AND TECHNICAL COLLEGES,<br><br>Petitioners. | |

BIRK, J. — This discretionary review presents the question whether claims for impairment of public pension rights may be brought in superior court outside the confines of chapter 34.05 RCW, the Administrative Procedure Act (APA). In conformity with controlling Supreme Court case law, we answer yes, and affirm.

I

The Washington State Board for Community and Technical Colleges (Board) regulates Washington's community and technical colleges under chapter 28B.50 RCW.  RCW 28B.50.050.  The Board administers retirement plans for community and technical college employees.  RCW 28B.10.400(1).  Between 1991 and 2015, the Board sponsored a retirement plan, which included a supplemental benefit.  At retirement, an employee is eligible to receive a supplemental benefit calculation if the employee "(1) actively participated in the primary Retirement Plan prior to July 1, 2011, (2) retired under the plan at the age of 62 or older, or retired due to health or permanent disability, and (3) achieved ten or more 'Years of Service' as defined by the Supplemental Retirement Plan."

In 2016, the Board changed the retirement plan document's definition of "Years of Service," limiting service credit only to "unbroken" employment," that is continuous employment with no "[b]reak in [s]ervice."  The 2016 plan defined "break in service" as "termination of all employment" for "a full academic year quarter or an equivalent period of time."

Receipt of a supplemental benefit calculation does not guarantee a supplemental benefit.  A supplemental benefit is awarded only when the retiree's projected "Assumed Retirement Benefit," an amount determined by an actuary based on contributions and projected earnings, is less than the retiree's "Goal Income," an amount based on their salary and years of participation in the primary retirement plan.  According to the State, "[f]or most retirees meeting the calculation eligibility criteria, the benefit amount received from the assumed retirement benefit

2

exceeds the retirement income goal, resulting in no supplemental benefit payment."

A

Gary Wolf taught at the Community Colleges of Spokane (CCS) from 1993 to 2002. After a four year break to care for his children, Wolf returned to teaching at CCS in 2006. While working for CCS, Wolf participated in the Board's retirement plan. Wolf retired in 2017. At retirement, Wolf applied for supplemental retirement benefits. The Board's Plan Administrator, John Boesenberg, reviewed Wolf's application and denied it. In an April 2018 letter, Boesenberg wrote to Wolf that he did "not meet the 10 years of unbroken full-time service credit or the equivalent part-time service credit required for eligibility for a supplemental benefit calculation." Wolf responded, seeking the procedures to appeal the determination.

In a July 2018 letter, Boesenberg explained the appeals procedure to Wolf, directing him to section 7.4 of the "Plan Document" for the Board's supplemental benefit plan. Section 7.4 details the "claims and appeals procedures" under the plan. If a claim is denied, it will be denied in writing, "state specific reasons for the denial," and "provide a description of the Plan's review procedures and the applicable time limits." The plan "delegates full and complete discretion to the Claims Administrator and Appeals Administrator" to "make findings of fact pertaining to a claim or appeal," to "interpret the plan as applied to the facts," and to "decide all aspects of the claim or appeal." For appeals, the "decision by the Appeals Administrator shall be the final and conclusive administrative review proceeding under the Plan."

3

Wolf appealed Boesenberg's decision, arguing that he did not need 10 years of continuous service to be eligible for a supplemental benefit calculation. In a November 19, 2018 letter, Boesenberg denied Wolf's appeal. Boesenberg concluded the letter writing, "[c]onsistent with Plan Document Section 7.4(h), this decision is the final and conclusive administrative review proceeding under the [State Board Supplemental Retirement Benefit Plan]." In 2019, Wolf filed a complaint in superior court against the State and the Board. In 2020, the parties agreed to stay the case.

B

Dana Rush taught at Green River College from 1991 to 2020. Rush did not teach during the winter quarter of 2018. While he taught at Green River College, Rush participated in the Board's retirement plan. When Rush returned to teach in the spring quarter of 2018, the Board required him to requalify for eligibility for the retirement plan. While he requalified for eligibility, the State made no tax deferred contributions to Rush's retirement plan. Rush retired in 2020.

In 2021, Rush filed a complaint in King County Superior Court against the State on behalf of himself and a class of similarly situated plaintiffs, "community college instructors" hired before July 1, 2011, "who had their retirement benefits denied or reduced because of temporary time off work." Rush claimed that the retirement plan constituted a unilateral contract, that the State had breached the contract by not providing retirement contributions to Rush on his return to teaching in 2018, and that the State breached the contract by "miscalculating the benefits calculation for the supplemental retirement benefit by not including time after

[Rush's] return from the one quarter off work." Citing Bakenhus v. City of Seattle, 48 Wn.2d 695, 296 P.2d 536 (1956), Rush alleged that the Board could not properly apply the 2016 plan's addition of the term "break in service" to him. In its answer filed in August 2021, the State asserted among its affirmative defenses that Rush had failed to exhaust his administrative remedies and that his claims were barred by the statute of limitations, without specifying the limitation asserted to be applicable.

In a February 9, 2022 e-mail, the Board's "HR [Human Resources] Consultant," notified Rush that, "[b]ased on the information provided, you are not eligible to receive a supplemental benefit." Because his assumed income was higher than his goal income, Rush was ineligible for the supplemental retirement benefit. The e-mail concluded, "[i]f you have any questions, please call me at [phone number]. Thank you for your years of service to higher education in Washington. We hope you find retirement a pleasant and rewarding experience."

C

In May 2023, with the State's stipulation, the court granted class certification. In November 2023, the court granted a joint motion to consolidate Wolf's case with Rush's class action under cause No. 21-2-04314-0 SEA. In July 2024, Rush obtained leave of court to amend his complaint. The amended complaint identified both Rush and Wolf as named plaintiffs. Rush restated his original claim that the State could not properly apply to him the 2016 plan's term "break in service." He asserted additional errors in the calculation of his years in service that he alleged he had learned after filing his original complaint, including

5

violation of a previous class action settlement with the State. In July 2024, the superior court granted Rush's motion for partial summary judgment on liability and it subsequently granted his motion to conform the class certification to the amended complaint.

In August 2024, the State filed a motion for summary judgment, asserting that the APA applied to Rush's and Wolf's supplemental benefits determinations, that both had failed to petition for judicial review within 30 days as required by RCW 34.05.542, and therefore their actions were untimely. For Rush, the State cited the February 2022 e-mail as the final agency action, which began his 30 days to petition for judicial review. For Wolf, the State cited the November 2018 letter as the final agency action, which began his 30 days to petition for judicial review. Rush sought summary judgment on the State's "exhaustion defense," arguing that the APA was inapplicable because his claims were for breach of contract, and therefore excluded from the APA and subject to the superior court's "exercise of original jurisdiction over contract actions." The superior court granted Rush's motion, denied the State's, and ruled that "this is a direct action against an employer brought by employees for breach of contract. The action thus arises under the Court's original jurisdiction."

The State sought discretionary review of the superior court's orders foreclosing its APA defense. A commissioner of this court granted discretionary review.

II

We review a trial court's decision to grant summary judgment de novo. Schwartz v. King County, 200 Wn.2d 231, 237, 516 P.3d 360 (2022). Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Id. We consider all facts and make all reasonable inferences in the light most favorable to the nonmoving party. Id. Constitutional issues are questions of law reviewed de novo. Hester v. State, 197 Wn.2d 623, 631, 483 P.3d 742 (2021). The interpretation of a statue is a question of law reviewed de novo. Troxell v. Rainier Pub. Sch. Dist. No. 307, 154 Wn.2d 345, 350, 111 P.3d 1173 (2005). The question of which statute of limitations applies is a question of law we review de novo. Silver v. Rudeen Mgmt. Co., 197 Wn.2d 535, 542, 484 P.3d 1251 (2021).

III

The superior court's order on summary judgment held that Rush's and Wolf's claims were "for breach of contract" and barred the State from asserting the defense that their claims were barred as untimely due to the APA. On review, the State again argues that Rush's and Wolf's claims are subject to the APA, and, because neither filed a petition for judicial review within 30 days of the Board's denial of their supplementary pension benefits, their claims are time barred.

We disagree. A pension impairment claim is a sui generis claim deriving from the state constitution's article I, section 23, and may be brought as an original action in superior court, subject to a three year limitation period.

A

In Bakenhus, a Seattle police officer sued the city and the board of police pension fund commissioners for allegedly underpaying him what he was owed under his police pension. 48 Wn.2d at 696. Bakenhus began working for the Seattle police department in 1925, subject to a 1909 pension law, which provided that after completing the requisite service time, Bakenhus would be entitled to a pension "equal to one half the salary attached to the rank held by him for the year next preceding his retirement." Id. However, in 1937, the pension law was changed to cap the maximum pension at $125 per month. Id. at 697. When Bakenhus retired in 1950, his preretirement salary was $370, which would have entitled him to a monthly pension of $185, $60 more than the $125 authorized under the 1937 law. Id. The court reasoned that public employee pensions are "deferred compensation for services rendered," and that the obligation "to pay a pension when the employee has fulfilled all of the prescribed conditions" is "contractual [in] nature." Id. at 698. The court explained, "the employee who accepts a job to which a pension plan is applicable contracts for a substantial pension and is entitled to receive the same when he has fulfilled the prescribed conditions." Id. at 701. Yet "pension rights may be modified prior to retirement, but only for the purpose of keeping the pension system flexible and maintaining its integrity." Id. And any modification must be reasonable, meaning "alterations of employees' pension right must bear some material relation to the theory of a pension system and its successful operation, and changes in a pension plan which result in disadvantage to employee should be accompanied by comparable new

advantages." Id. at 701-02. Because the 1937 pension law reduced his anticipated pension by one third without providing any corresponding benefit, the court awarded Bakenhus the $185 per month pension. Id. at 697, 703.

Three years after Bakenhus was decided, the court clarified that Bakenhus "established a contract concept or analogy in the various municipal pension systems," but it did not follow that "all of the principles of contract law can be applied to the so-called contract for a pension." Dailey v. City of Seattle, 54 Wn.2d 733, 738, 344 P.2d 718 (1959). This "contract theory of public pensions" acts as a limit on legislative control over public pension statutes. See Noah v. State, 112 Wn.2d 841, 844-45, 774 P.2d 516 (1989). A violation of the employee's pension rights by the State "amounts to an unconstitutional impairment of contracts" under article I, section 23. Bowles v. Wash. Dep't of Ret. Sys., 121 Wn.2d 52, 65, 847 P.2d 440 (1993) In Washington Education Association v. Washington Department of Retiremnt Systems (WEA), the court recognized Bakenhus as defining the analysis for "impairment of public pension contracts." 181 Wn.2d 233, 243, 332 P.3d 439 (2014); see also Hester, 197 Wn.2d at 631-32 (referring to pension rights cases as "pension impairment claims"). "[E]ven though we recognized that pension rights cases have some characteristics of a contract and are characterized as contractual in nature," a public retirement statute does "not constitute a complete contract in writing." Hester, 197 Wn.2d at 632. A public employee's right to their pension is vested at the time their employment commences. Bowles, 121 Wn.2d at 65. A pension impairment claim may be brought in response to

administrative agency action.  See id. (citing Wash. Ass'n of County Offs. v. Wash. Pub. Emp. Ret. Sys. Bd., 89 Wn.2d 729, 575 P.2d 230 (1978)).

No Washington case has held that public pension impairment claims, first articulated in Bakenhus, are exclusively subject to judicial review under the APA. Instead, parties asserting public pension impairment claims have consistently first brought those claims in superior court.  See Bowles, 121 Wn.2d at 59-60 (class action seeking declaratory and injunctive relief filed in superior court); WEA, 181 Wn.2d at 240 (class action filed in superior court); Hester, 197 Wn.2d at 629-31 (action filed in superior court).  We read Bakenhus and its progeny as fashioning a common law sui generis right for public employees to their vested pension rights, subject to reasonable and necessary modification by the State.  If the legislature or an administrative agency unreasonably impairs public pension rights contrary to the Bakenhus line of cases, a claimant may bring an action in superior court.

B

The Washington Supreme Court has held five times and consistently for more than 65 years that pension impairment claims under the Bakenhus line of cases are subject to a three-year limitation period, accruing upon retirement.  Most recently, the court explained, "We have previously addressed and resolved this issue as applied in pension impairment claims and have held that these types of claims are subject to a three-year statute of limitations period, which accrues upon retirement."  Hester, 197 Wn.2d at 631.  Accord WEA, 181 Wn.2d at 248 ("It is well settled that retirees are subject to a three-year statute of limitations for actions alleging a breach of pension contracts."); Bowles, 121 Wn.2d at 78 ("A 3-year

10

statute of limitations applies to actions alleging a breach of state employee pension rights."); Noah, 112 Wn.2d at 843 (measuring timeliness based on three-year statute of limitations); Martin v. City of Spokane, 55 Wn.2d 52, 56, 345 P.2d 1113 (1959) ("the three-year statute of limitations must apply").

In asking us to instead apply the APA's 30-day limitation period accruing on the occasion of an administrative action contrary to Hester, WEA, Bowles, Noah, and Martin, the State contends that the "statutory procedural requirements under the APA are more akin to the Rules of Appellate Procedure," or alternatively, to statutory prerequisites to file suit, such as the 10-day filing deadline in the Fair Campaign Practices Act (FCPA), chapter 42.17A RCW. We disagree. "[P]ension impairment claims . . . are subject to a three-year statute of limitations period, which accrues upon retirement." Hester, 197 Wn.2d at 631. Because public pension impairment claims are subject to a three-year limitations period they cannot be exclusively subject to the APA with its incompatible 30-day appeal period commencing upon agency action.

1

We are unpersuaded by the State's attempt to categorize Rush's and Wolf's claims, and its own resolution of those claims, within the APA. Under the APA, an "adjudicative hearing" is a "proceeding before an agency in which an opportunity for hearing before that agency is required by statute or constitutional right before or after entry of an order by the agency." RCW 34.05.010(1). After an adjudicative hearing, the resulting order "shall also include a statement of the available procedures and time limits for seeking reconsideration or other administrative

relief." RCW 34.05.461(3). In the absence of other rules to the contrary, chapter 10-08 WAC provides model rules to govern any adjudicative proceedings. WAC 10-08-001(4). Under the model rules, every decision and order shall "[c]ontain a statement describing the available post-hearing remedies."[1] WAC 10-08-210(6).

Neither the Board's November 19, 2018 letter to Wolf nor its February 9, 2022 e-mail to Rush notified them that these communications were allegedly agency actions starting a 30-day period in which they needed to seek judicial review to avoid potentially losing pension benefits. The State explains, however, that this was not required, because, it says, the above rules "do not apply" where the Board "did not hold an adjudicative proceeding." Rather, the State characterizes the Board's actions as "other agency action" under RCW 34.05.570(4); see Valley View Indus. Park v. City of Redmond, 107 Wn.2d 621, 634, 733 P.2d 182 (1987) ("A letter from an agency will constitute a final order if the letter clearly 'fixes a legal relationship as a consummation of the administrative process.' Such a letter must be so written as to be clearly understandable as a final determination of rights." (quoting Bock v. State, 91 Wn.2d 94, 99, 586 P.2d 1173 (1978)), abrogated on other grounds by Yim v. City of Seattle, 194 Wn.2d 682, 451 P.3d 694 (2019). "Agency action" is defined as "licensing, the

_____

[1] For comparison, federal regulations under the Employee Retirement Income Security Act of 1974 require that when providing notice of any adverse benefit determination, plan administrators must "set forth, in a manner calculated to be understood by the claimant" a "description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review." 29 CFR § 2560.503-1(g)(iv). As explained below, the State's argument would make Washington law much less protective of the interests of state law pension claimants.

implementation or enforcement of a statute, the adoption or application of an agency rule or order, the imposition of sanctions, or the granting or withholding of benefits." RCW 34.05.010(3). Under the State's argument, an agency action giving rise to a Bakenhus claim would need to be appealed to superior court within 30 days, RCW 34.05.542(3), but without an adjudicatory proceeding there would be no requirement for the agency to alert the retiree of the need to do so.

In addition to being incompatible with Hester, WEA, Bowles, Noah, and Martin, the State's argument creates a grave risk of the erroneous loss of earned pension benefits. But the authority it cites in support of subjecting pension impairment claims exclusively to the APA points away from treating them as "other agency action." The State claims that "courts have routinely held that the APA applies to retirement benefits decisions between state agencies and their employees." To support this position, the State cites six cases. In each, the retiree was afforded an adjudicative hearing on a disputed issue and in that setting— subject to the requirements of fair notice of appeal procedures—appealed through the APA and sought judicial review.[2] These decisions thus do not support treating

---

[2] In Densley v. Department of Retirement Systems, Densley requested additional retirement service credit based on his time in the National Guard. 162 Wn.2d 210, 215, 173 P.3d 885 (2007). The plan administrator denied Densley's request, reasoning that it was not " 'active federal service' " as required by RCW 41.40.170(3). Id. at 215-16. Densley appealed the Department of Retirement Systems's (DRS) decision, was granted an adjudicative proceeding under the APA, and later petitioned for judicial review. Id. at 216. In Vorhies v. Department of Retirement Systems, Vorhies applied for disability retirement and DRS denied his application for catastrophic disability benefits. 199 Wn. App. 543, 547, 399 P.3d 599 (2017). Vorhies filed a notice of appeal to the DRS and was granted a three day, adjudicative hearing. Id. After the hearing officer affirmed the DRS's denial, Vorhies petitioned for judicial review under the APA. Id. at 551-53. In Probst v. Department of Retirement Systems, the DRS informed Probst that he

agency impairments of pensions redressable under <u>Bakenhus</u> as "other agency action" subject to the APA and lacking any procedural safeguards.

2

Citing <u>Freedom Foundation v. Teamsters Local 117 Segregated Fund</u>, 197 Wn.2d 116, 137, 480 P.3d 1119 (2021), the State argues that the APA's 30-day limitation on petitions for judicial review is not a statute of limitation but a "statutory prerequisite to suit."  In <u>Freedom Foundation</u>, the court affirmed dismissal of citizen suits brought under the FCPA  because the plaintiffs had not complied with a statutory limitation that they could proceed " '*only if*" they had, among other things, brought suit within 10 days after governmental authorities had failed to act on their second notice of an alleged campaign violation.  <u>Id.</u> at 131-32 (quoting RCW 42.17A.765(4)).  The FCPA also required that the claim be filed within two years

---

had to wait to receive interest on his retirement plan, which he disputed.  167 Wn. App. 180, 183, 271 P.3d 966 (2012).  Probst appealed the decision to the DRS, but before resolution, he filed a class action against the DRS challenging the same interest calculation practices.  <u>Id.</u> at 184.  The DRS held an adjudicative proceeding and ruled in favor of the DRS, Probst sought judicial review, and the superior court consolidated the judicial review and class action cases.  <u>Id.</u> at 184-85.  In <u>Hahn v. Department of Retirement Systems</u>, Hahn disagreed with the DRS's calculation of her retroactive service credit.  137 Wn. App. 933, 937, 155 P.3d 177 (2007).  She sought internal review and, in an adjudicative proceeding, the presiding officer confirmed the DRS's computation.  <u>Id.</u> at 937-38.  Hahn petitioned for judicial review of the presiding officer's decision.  <u>Id.</u> at 938.  In <u>Hertzke v. Department of Retirement Systems</u>, Hertzke appealed a DRS determination that he had been overpaid pension benefits.  104 Wn. App. 920, 926, 18 P.3d 588 (2001).  Hertzke appealed and a "DRS Presiding Officer," of an adjudicative proceeding, rendered a written decision.  <u>Id.</u>  Hertzke petitioned for judicial review and the superior court reversed.  <u>Id.</u> at 926-27 (cited provisions on review relate to RCW 34.05.570(3)).  In <u>Cooley v. Hollister</u>, Cooley challenged the DRS's decision not to include incentive pay in its retirement calculation.  38 Wn. App. 447, 449, 687 P.2d 230 (1984).  Cooley requested, and was granted, an administrative hearing.  <u>Id.</u>  Cooley appealed the administrative hearing's result to the superior court.  <u>Id.</u> at 448, 450.

of the alleged violation. Id. at 132. The court rejected the argument that holding plaintiffs to the 10-day deadline created a redundant statute of limitation, instead likening the deadline to a statutory waiting period imposed as prerequisite to suit. Id. at 138. The statutory periods served to give the government the option to pursue FCPA violations before the private parties filed suit. See id. at 131.

Here, the State cites no case treating the APA's 30-day limitation period similarly, nor can it be analogized to a waiting period. Freedom Foundation involved a detailed statutory scheme spelling out exactly the steps that were required to be taken as a precondition to bringing a citizen action under the FCPA. And, like the statutory waiting periods to which the court analogized, those steps involved specified time frames that allowed claimants to determine when they needed to be initiated to also ultimately comply with the requirement that their suit be filed within two years of the alleged violation. The State here points to no comparable manner in which the APA's 30-day limitation could be applied as a statutory prerequisite to a subsequent lawsuit that the Supreme Court has held must be brought within three years of retirement. Because Bakenhus claims are not governed by a similar detailed statutory scheme like the one laid out in Freedom Foundation, if we were to apply the 30-day deadline based on administrative actions never designated as such but subsequently shown to be "other agency action," pensioners would be unable to rationally determine the applicable limitations period. In Freedom Foundation the court did not approve the imposition of redundant, mutually inconsistent limitations periods, but held instead

that the statute there did not create that conundrum. The State's argument here, by contrast, would do just that.

C

Wolf retired in 2017 and commenced his present action in 2019. Rush retired in 2020 and commenced his present action in 2021. To the extent Wolf and Rush assert claims cognizable under the Bakenhus line of cases, their claims accrued at retirement, were required to be filed within three years of retirement, and were timely. To make Bakenhus claims subject to the APA exclusively and its requirement that petitions for judicial review be filed within 30 days of agency action would conflict with clearly established Supreme Court law governing the accrual and limitations of these claims.

Affirmed.

_Birk, J._

WE CONCUR:

_Feldman, J._          _Díaz, J._